**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MAMMOET-STARNETH LLC, | Case No. 17-12925 (LSS) |
| Debtor.[1] | **Docket Ref. Nos. 6, 84, 98** |

## NEW YORK WHEEL OWNER LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION TO DEBTOR'S REJECTION MOTION

New York Wheel Owner LLC ("***NYW***") by its undersigned counsel, hereby submits this supplemental brief (this "***Supplemental Brief***") in support of its objection [D.I. 84] (the "***Objection***")[2] to the *Debtor's First Motion for an Order Authorizing and Approving Rejection of Certain Executory Contracts Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 6] (the "***Contracts Motion***") filed by the above-captioned Debtor.

## BACKGROUND

1.     On December 13, 2017, the Debtor filed the Contracts Motion, seeking to reject all of its manufacturing contracts (collectively, the "***Contracts***") with its existing subcontractors (collectively, the "***Subcontractors***").

2.     On January 3, 2018, NYW filed its Objection.[3]

---

[1]  The last four digits of the Debtor's federal tax identification number are 4518.  The Debtor's address is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

[2]  Capitalized terms not otherwise defined herein shall have the meanings given to them in the Objection.

[3]  Further factual background can be found in NYW's Objection.

3.      On January 5, 2018, the Debtor filed a response to the Objection in its *Omnibus Response to NYW's Objections to Matters Scheduled for Hearing on January 8, 2018* (the "**Response**") [D.I. 98].

4.      On January 8, 2018, the Court held a hearing on, *inter alia*, the Debtor's Contracts Motion (the "**Hearing**").[4]  NYW argued that the Contracts Motion should either be denied or the Hearing should be adjourned. The Court adjourned the Hearing and ultimately scheduled the Hearing on March 5, 2018.

5.      At the Hearing, the Court requested that, in advance of the adjourned Hearing, the Debtor provide all Contracts to NYW and to file the Contracts under seal; the Debtor agreed to do so.  Hr'g Tr. 69:18-70:5.  However, it was not until the afternoon of February 28, 2018, during the parties' scheduled mediation, that the Debtor a thumb drive to NYW supposedly including all the Contracts. NYW has not had sufficient time to review the documents included on that thumb drive. Further, to NYW's knowledge, the Contracts have not been filed under seal with the Court.

6.      Additionally, at the Hearing, the Court invited NYW to submit supplemental briefing on certain other issues raised at the Hearing. To that end, this Supplemental Brief discusses (i) whether any indemnity claims under the Contracts would be prepetition or postpetition obligations of the Debtor and (ii) whether the business judgment standard or a heightened standard would apply to the Debtor's request to reject the Contracts.

---

[4]   A copy of the Hearing transcript is attached hereto as **Exhibit A**.

## DISCUSSION

I.   **Indemnity Claims, Which May Be Asserted Against the Debtor in the Future Pursuant to Prepetition Contracts, Are "Claims" Within the Meaning of Section 101(5) of the Bankruptcy Code**

7.      In its Response, the Debtor argued that some of the Contracts provide that "both parties [are] to be liable and to indemnify the other party for claims of third parties caused by the causing party," and "every day such contract remained unrejected, the Debtor's estate is exposed to unquantifiable potential liability based on potential postpetition indemnification claims, which could substantially increase administrative claims against the Debtor's estate." Resp. ¶ 58. The Debtor's assertion is unsupported and contrary to established Third Circuit law.

8.      "The Bankruptcy Code . . . defines a 'claim' as '[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . .'" *Jeld-Wen, Inc. v. Van Brunt* (*In re Grossman's Inc.*), 607 F.3d 114, 121 (3d Cir. 2010) (quoting 11 U.S.C. § 101(5)) (emphasis omitted).  And the Third Circuit has made clear that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *Id.* at 125.

9.      With respect to indemnification claims, courts have "[c]onsistently . . . held that an indemnification claim based upon pre-petition services or conduct is" nothing more than "a form of prepetition compensation for services that compensation for services that is not entitled to administrative expense priority." *In re Summit Metals, Inc.*, 379 B.R. 40, 56 (Bankr. D. Del. 2007), *aff'd* 406 F. App'x 634 (3d Cir. 2011) (emphasis added) (collecting cases); *see also In re Superior Air Parts, Inc.*, 486 B.R. 728, 739 (Bankr. N.D. Tex. 2012), *aff'd sub nom. Lycoming Engines v. Superior Air Parts, Inc.*, 2014 WL 1976757 (N.D. Tex. May 15, 2014) ("[A] right to indemnification is a pre-petition 'claim' under the Bankruptcy Code where the indemnification

agreement is executed pre-petition, even if the facts giving rise to actual liability did not occur until after the discharge."); *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 51 (Bankr. D. Del. 2001) (refusing to grant administrative status to applicant's indemnification claim arising from a contract executed prepetition); *In re Mid–American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (declining to grant administrative expense status for indemnification claims arising from securities litigation because it arose prepetition out of the applicants' pre-petition conduct); *Houbigant, Inc. v. ACB Mercantile, Inc. (In re Houbigant, Inc.)*, 188 B.R. 347, 359 (Bankr.S.D.N.Y.1995) (finding that because an agreement was executed prepetition, any contractual right to indemnification arising from that agreement would only be a prepetition unsecured claim); *In re Philadelphia Mortg. Tr.*, 117 B.R. 820, 828 (Bankr. E.D. Pa. 1990) ("Claims based upon pre-petition conduct . . . have consistently been disallowed administrative status because administrative claims must arise post-petition.").

10.     Therefore, even if some or all of the Contracts include an indemnification provision, such potential indemnification liability would only give rise to prepetition unsecured "claims" under section 101(5) of the Bankruptcy Code, and the estate would ***not*** be exposed to a growing "unquantifiable" administrative expense liability for "every day such contract[s] remain[] unrejected," as the Debtor contends.

## II.     The Business Judgment Standard Does Not Apply to the Debtor's Request to Reject the Contracts

11.     "The *usual* test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."  *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (emphasis added), *aff'd* 465 U.S. 513 (1984).  Under the facts in this case, however, the Court should apply a heightened standard of scrutiny.

12.    Courts have recognized that applying "the heightened scrutiny/entire fairness standard," which "closely examines transactions involving insiders" may be appropriate when a debtor's decision to assume or reject an agreement under section 365 of the Bankruptcy Code involves an insider. *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).

13.    In *Inkeepers USA Trust*, the court denied a the debtor's motion to assume a plan support agreement because the debtor had not acted in good faith and the plan support agreement conferred inappropriate benefits on the debtor's parent. *Id.* at 233-34. Although the court agreed that a "heightened scrutiny/entire fairness" standard may apply, it ultimately did not decide the applicable standard because the debtor failed to meet even a business judgment standard based on its bad faith. *Id.* at 231.

14.    Other courts have agreed that a heightened standard of review is appropriate in bankruptcy when insiders are involved or will benefit from the debtor's proposed action. *See, e.g.*, *Westship, Inc. v. Trident Shipworks, Inc.*, 247 B.R. 856, 865-66 (M.D. Fla. 2000) (holding that "it was prudent of the Bankruptcy Court" to apply heightened scrutiny in approving the assumption of an agreement with an alleged insider); *In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) (holding that sales to insiders are "subjected to heightened scrutiny because they are rife with the possibility of abuse") (citation omitted); *In re Condere Corp.*, 228 B.R. 615, 632 (Bankr. S.D. Miss. 1998) (applying heightened scrutiny to sale to insider-controlled entity); *but see In re Trans World Airlines, Inc.*, 261 B.R. 122 (Bankr. D. Del. 2001) (applying business judgment standard in considering rejection motion because creditor had "not made out a case of bad faith or improper insider benefit").

15.    In this case, there is no creditors' committee, and there is no independent fiduciary–the Debtor has been, and continues to be controlled, by and for the benefit of its

parent, MUSA.[5] It is clear that the Rejection Motion is a part of MUSA's scheme to use this chapter 11 process to usurp all the Debtor's rights while seeking to strip away all of NYW's litigation rights and ability to complete the Project. Therefore, given the insider control and insider benefit scheme that MUSA seeks to employ, the Court should apply a heightened standard of review in considering the Contracts Motion. NYW submits the Debtor has not satisfied the heightened standard of review.

## **CONCLUSION**

16.    As described above and in the Objection, the Debtor has not demonstrated that there a benefit to the estate of a rejection of the Contracts at this point. Therefore, the Debtor's motion to reject the Contracts should be denied at this time.

*[Remainder of Page Intentionally Left Blank]*

---

[5]    While a CRO has been appointed, the CRO does not have independent authority and is subject to the control of the Debtor's parent.

01:22948119.1

Dated:    March 2, 2018
          Wilmington, Delaware

*/s/ M. Blake Cleary*
M. Blake Cleary (No. 3614)
Sean M. Beach (No. 4020)
Andrew L. Magaziner (No. 5426)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mbcleary@ycst.com
sbeach@ycst.com
amagaziner@ycst.com

-and-

Michael A. Rosenthal (*pro hac vice* pending)
David M. Feldman (admitted *pro hac vice*)
Alan Moskowitz (*pro hac vice* pending)
Matthew G. Bouslog (*pro hac vice* pending)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
mrosenthal@gibsonunn.com
dfeldman@gibsondunn.com
achampion@gibsondunn.com
pkremer@gibsondunn.com
mbouslog@gibsondunn.com

# Exhibit A

### *Hearing Transcript*

01:22948119.1

# In The Matter Of:

*Mammoet-Starneth, LLC*

---

*Transcript of Electronic Recording*
*January 8, 2018*

---

*Wilcox & Fetzer, Ltd.*
*1330 King Street*
*Wilmington, DE   19801*
*email: depos@wilfet.com, web: www.wilfet.com*
*phone:  302-655-0477, fax:  302-655-0497*



**WILCOX & FETZER LTD.**

Original File Mammoet-Starneth 01-08-18 Transcript of Electronic Recording.txt
Min-U-Script® with Word Index

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                          )    Chapter 11
                                )
MAMMOET-STARNETH, LLC,          )    Case No. 17-12925 (LSS)
                                )
          Debtor.               )
                                     Wilmington, Delaware
                                     January 8, 2018
                                     2:02 p.m.


TRANSCRIPT OF AN ELECTRONIC RECORDING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

OMNIBUS HEARING

APPEARANCES:

For the Debtors         JASON M. MADRON, ESQ.
                        JOSEPH C. BARSALONA, II, ESQ.
                        RICHARDS LAYTON & FINGER, P.A.
                             -and-
                        ANDREW H. SHERMAN, ESQ.
                        BORIS MANKOVETSKIY, ESQ.
                        SILLS CUMMIS & GROSS, P.C.


For New York Wheel      M. BLAKE CLEARY, ESQ.
                        ANDREW L. MAGAZINER, ESQ.
                        YOUNG CONAWAY STARGATT & TAYLOR LLP
                             -and-
                        DAVID M. FELDMAN, ESQ.
                        MICHAEL A. ROSENTHAL, ESQ.
                        ALAN MOSKOWITZ, ESQ.
                        ANNE CHAMPION, ESQ.
                        JASON Z. GOLDSTEIN, ESQ.
                        GIBSON DUNN & CRUTCHER, LLP


For the Lender          JUSTIN R. ALBERTO, ESQ.
                        ERIN R. FAY, ESQ.
                        BAYARD, P.A.
                             -and-
                        ROBERT E. RICHARDS, ESQ.
                        PHILIP R. WHITE, ESQ.
                        JONATHAN JEMISON, ESQ.
                        DENTONS



```
1   (APPEARANCES CONT'D:
    Telephonic Appearances:)
2
    For the U.S. Trustee       HANNAH McCOLLUM, ESQ.
3                              OFFICE OF THE UNITED STATES TRUSTEE

4                                    - - - - -

5   AUDIO OPERATOR:  MICHAEL MILLER

6   Transcribed by:            WILCOX & FETZER LTD.
                               1330 King Street
7                              Wilmington, Delaware  19801
                               302-655-0477
8                              www.wilfet.com

9         Proceedings recorded by electronic sound recording.

10  Transcript produced by transcriptionist.

11                                   - - - - -

12        THE COURT:  Please be seated.

13        MR. MADRON:  Good afternoon, Your Honor.  For the

14  record, Jason Madron of Richards, Layton & Finger on behalf of

15  Mammoet-Starneth, LLC, a Chapter 11 debtor.

16        Your Honor, I'm joined in the courtroom today by my

17  co-counsel, Andrew Sherman and Boris Mankovetskiy, of Sills

18  Cummis & Gross.

19        Also in the courtroom, Your Honor, is Christiaan

20  Lavooij, the manager of the debtor, as well as William

21  Henrich, who is the debtor's proposed CRO.

22        Your Honor, if I may, I'll just proceed from the form

23  of agenda that we filed last Thursday.  Agenda items 1 and 2

24  are continued matters.  This was our bid procedures motion, as

25  well as our solicitation procedures motion.  Those matters
```

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1          MR. MADRON:  If acceptable to Your Honor, we will, you

2     know, provide a clean and redline copy of that order --

3          THE COURT:  Yes, that would be fine.

4          MR. MADRON:  -- to opposing counsel and we'll submit

5     that under certification of counsel later this week.

6          And then lastly, as a housekeeping matter, along with

7     our reply that we filed on Friday, we did file a motion for

8     leave seeking to file that out of time.  I do have a proposed

9     form of order granting that ex parte motion, if I may approach

10    with that.

11         THE COURT:  Yes.

12         MR. MADRON:  And we appreciate Your Honor's indulgence

13    in granting that motion and considering our reply papers.

14         THE COURT:  That's fine.

15         MR. MADRON:  And other than that, I believe we will

16    see Your Honor on the 25th.

17         THE COURT:  Mr. Sherman has something.

18         MR. SHERMAN:  Thank you, Your Honor.  I heard Your

19    Honor's statement about the contracts, and we'd be happy to

20    get them to you.  As Mr. Feldman alluded to earlier, they do

21    have confidentiality restrictions.  Would the Court consider a

22    sealing order so we can provide them to the Court and --

23         THE COURT:  Yes.

24         MR. SHERMAN:  Okay.  We will work with Mr. Madron,

25    have that submitted.



1      MS. CHAMPION:  Yes, we'll talk afterwards.  But we're

2  not sure we have that --

3      MR. SHERMAN:  We're happy to get -- if they don't have

4  them, they will have them, the Court will have them all in

5  time for the 25th.

6      THE COURT:  Okay.  Anything else?

7      MR. SHERMAN:  As far as the DIP order, Your Honor, I

8  think we'll -- I think we'll circulate it.

9      THE COURT:  That needs to be revised and in accordance

10  with my ruling and then you can submit that under

11  certification.

12      MR. SHERMAN:  Thank you, Judge.

13      THE COURT:  Thank you.  We're adjourned.

14      ALL COUNSEL:  Thank you.

15      (The hearing adjourned at 3:47 p.m.)

16          C E R T I F I C A T I O N

17      I, Julie H. Parrack, transcriber, certify that the
   foregoing is a correct transcript, to the best of my ability,
18  from the official electronic sound recording of the
   proceedings in the above-entitled matter.
19
   /s/Julie H. Parrack          January 9, 2018
20  Julie H. Parrack

21

22

23

24

25

