## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| MAMMOET-STARNETH LLC, | ) Chapter 11 |
|  | ) |
|  | ) Case No. 17-12925 (LSS) |
| Debtor.[1] | ) |
|  | ) |

---

## MODIFIED SECOND AMENDED CHAPTER 11 PLAN
## OF LIQUIDATION OF MAMMOET-STARNETH LLC

---

**SILLS CUMMIS & GROSS P.C.**
Andrew H. Sherman
Boris I. Mankovetskiy
Lucas F. Hammonds
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500

- and -

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Counsel for the Debtor and Debtor in Possession*

Dated: March 20, 2019
        Wilmington, Delaware

---

[1] The last four digits of the Debtor's federal tax identification number are 4518. The Debtor's address is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## INTRODUCTION

The Debtor proposes this Plan[2] for resolution and satisfaction of all Claims against and Equity Interests in the Debtor, and is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtor's organizational structure and assets and liabilities, the events leading to the Chapter 11 Case, a summary and analysis of the Plan, and a description of the New York Wheel Causes of Action.  All Holders of Claims entitled to vote on the Plan are encouraged to consult the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AS APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## ARTICLE I.

## DEFINED TERMS, RULES OF CONSTRUCTION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.  Defined Terms

1.    "Administrative Claim" means any Claim entitled to priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estate; (b) Professional Claims; and (c) all fees and charges assessed against the Estate arising under 28 U.S.C. § 1930.

2.    "Administrative Claims Bar Date" means sixty (60) days after the Effective Date, and is the date by which requests for payment of Administrative Claims other than Professional Claims must be Filed, subject to any exceptions specifically set forth in this Plan.

3.    "Affiliate" means an "affiliate" as such term is defined in section 101(2) of the Bankruptcy Code.

4.    "Allowed" means, with respect to a Claim against the Debtor, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the

---

[2] All capitalized terms not defined in this introduction have the same meanings ascribed to them in Article I of the Plan.

Debtor or other authorized parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is deemed "Allowed" under the Plan or by any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; provided, however, that any Claim allowed pursuant to an order of the Bankruptcy Court or an express agreement between the Holder of such Claim and the Debtor solely for the purpose of voting to accept or reject the Plan will not be considered an "Allowed Claim" under the Plan; provided further, however, that any Claim expunged or disallowed under the Plan or otherwise shall not be an Allowed Claim.  If a Claim is "Allowed" only in part, references to "Allowed Claims" include and are limited to the portion of such Claim that is Allowed.

5.    "Available Cash" means the Debtor's Cash on hand on the Effective Date (including (a) proceeds from any draw on the DIP Facility made for the purpose of making distributions to Holders of Allowed Claims, including Professional Claims, or paying the post-Effective Date legal, professional, or other fees and expenses incurred by the Debtor's and the Disbursing Agent's professionals; (b) the MUSA Contribution; and (c) any Sale Proceeds or proceeds of any other assets of the Estate).

6.    "Balloting Agent" means Omni Management Group, Inc.[3]

7.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*.

8.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

9.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075, and the general, local, and chambers rules of the Bankruptcy Court, as the context may require.

10.    "Bar Date" means, collectively or individually, the Administrative Claims Bar Date, the Rejection Damages Claim Bar Date, and any deadline by which a Proof of Claim must be filed under the General Bar Date Order, as applicable.

11.    "Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Wilmington, Delaware are required or authorized by law or governmental action to close.

12.    "Carveout Parties" means, collectively, the Mammoet Carveout Parties and the Starneth Carveout Parties.

13.    "Cash" means legal tender of the United States of America or the equivalent thereof.

---

[3] On May 12, 2018, as a result of a change in ownership, "Rust Consulting/Omni Bankruptcy" changed its name to "Omni Management Group, Inc.".

14.    "<u>Causes of Action</u>" means any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtor and/or the Estate), including, without limitation, (i) any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, and (ii) the New York Wheel Causes of Action, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the Effective Date or instituted hereafter against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the Effective Date.

15.    "<u>Chapter 11 Case</u>" means the chapter 11 case commenced by the Debtor, styled *In re Mammoet-Starneth LLC*, Case No. 17-12925 (LSS), pending before the Bankruptcy Court.

16.    "<u>Claim</u>" means a "claim" as such term is defined in section 101(5) of the Bankruptcy Code.

17.    "<u>Claims Objection</u>" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, expunge, subordinate, estimate, or establish the priority of, any Claim.

18.    "<u>Claims Objection Deadline</u>" means the date that is ninety (90) days following the Effective Date; <u>provided</u>, <u>however</u>, that the Claims Objection Deadline may be extended (i) by order of the Bankruptcy Court upon a motion filed by the Debtor, or (ii) with respect to any Claim that is subject to objection, by agreement between the Holder of that Claim and the Debtor.

19.    "<u>Claims Record Date</u>" means the Voting Deadline, which is the date on which the transfer register for each Class of Claims or Equity Interests, as maintained by the Debtor or its agents, shall be deemed closed.

20.    "<u>Claims Register</u>" means the official register of Claims in this Chapter 11 Case maintained by the Bankruptcy Court.

21.    "<u>Class</u>" means a group of Holders of Claims or Equity Interests classified together under the Plan.

22.    "<u>Confirmation</u>" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

23.     "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

24.     "<u>Confirmation Hearing</u>" means the hearing before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of the Plan.

25.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan, as amended, supplemented, or modified, under, among others, section 1129 of the Bankruptcy Code.

26.     "<u>Creditor</u>" means a "creditor" as defined in section 101(10) of the Bankruptcy Code.

27.     "<u>Cure Claim</u>" means a Claim based upon a monetary default, if any, by the Debtor under an Executory Contract or Unexpired Lease as of the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

28.     "<u>D&O Policies</u>" means all insurance policies for liability of directors and officers of the Debtor maintained by the Debtor as of the Effective Date, if any.

29.     "<u>DBA</u>" means that certain Design-Build Agreement, dated as of March 5, 2014 between the Debtor and New York Wheel, together with the two amendments thereto, CAR 1, dated as of December 11, 2014, and CAR 2, dated as of May 18, 2015.

30.     "<u>Debtor</u>" means Mammoet-Starneth LLC.

31.     "<u>DIP Claim</u>" means any claim resulting from or related to the "Obligations" as that term is defined in the DIP Credit Agreement, which shall be deemed Allowed upon the occurrence of the Effective Date in an amount equal to the amounts owed under the DIP Credit Agreement as of the Effective Date.

32.     "<u>DIP Credit Agreement</u>" has the same meaning as in the DIP Order.

33.     "<u>DIP Facility</u>" has the same meaning as in the DIP Order.

34.     "<u>DIP Lender</u>" means MUSA.

35.     "<u>DIP Order</u>" means that certain final order approving post-petition financing and granting related relief entered by the Bankruptcy Court on May 16, 2018 [D.I. 340], as amended, supplemented, or modified.

36.     "<u>Disbursing Agent</u>" means the Debtor or a Person designated by the Debtor.

37.     "<u>Disclosure Statement</u>" means the disclosure statement for the Plan, as amended, supplemented, or modified in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

38.    "<u>Disclosure Statement Order</u>" means the order approving the Disclosure Statement and the procedures for the solicitation and tabulation of votes to accept or reject the Plan at D.I. 604.

39.    "<u>Disputed Claim</u>" means either (a) a Claim listed in the Schedules and designated as "disputed," "contingent," or "unliquidated"; or (b) a Claim to which a Claims Objection has been Filed by the Claims Objection Deadline, and which objection has not been resolved by a Final Order.

40.    "<u>Distribution Account</u>" means the existing bank account of the Debtor selected for maintaining Cash or other assets from time to time necessary to satisfy payments on and after the Effective Date to Holders of certain Allowed Claims as provided in this Plan. The Distribution Account shall be funded from Available Cash, any New York Wheel Proceeds, and any Supplemental Contributions, and any advances under Article III(H) of this Plan.

41.    "<u>Distribution Date</u>" means a date or dates on which the Disbursing Agent makes a distribution, or causes a distribution to be made.

42.    "<u>Effective Date</u>" means the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all of the conditions precedent to the Effective Date specified in Article IX hereof have been satisfied or waived pursuant to Article IX hereof.

43.    "<u>Entity</u>" means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

44.    "<u>Equity Interest</u>" means any "equity security," as defined in section 101(16) of the Bankruptcy Code, of the Debtor existing immediately prior to the Effective Date, or any other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell, or subscribe for any such interest.

45.    "<u>Estate</u>" means the estate of the Debtor created under section 541 of the Bankruptcy Code.

46.    "<u>Exculpated Claim</u>" means any claim related to any act or omission in connection with, relating to or arising out of the Debtor's restructuring efforts; the Chapter 11 Case; any Sale; the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan; the filing of the Chapter 11 Case; the pursuit of confirmation and consummation of the Plan; the administration and implementation of the Plan; or the distribution of property under the Plan or any related agreement.

47.    "Exculpated Party" means (i) the Debtor, (ii) the Debtor's current or former officers and directors, and (iii) the Debtor's Professionals.  With respect to the parties identified in the foregoing (ii) and (iii), such parties are "Exculpated Parties" solely to the extent that they served in such capacities on or after the Petition Date.

48.    "Executory Contract" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

49.    "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court in this Chapter 11 Case.

50.    "Final Order" means an order or judgment of the Bankruptcy Court, or any other court of competent jurisdiction, which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; provided, however, that the possibility that a motion under Rule 9024 of the Bankruptcy Rules, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause an order not to be a Final Order.

51.    "General Bar Date Order" means that certain order establishing deadlines and procedures for filing proofs of claim and granting related relief entered by the Bankruptcy Court on January 8, 2018 [D.I. 102].

52.    "General Unsecured Claim" means any Claim against the Debtor that is not a/an: (a) DIP Claim; (b) Administrative Claim; (c) Professional Claim; (d) Priority Tax Claim; (e) Secured Claim; (f) Other Priority Claim; (g) New York Wheel Claim; or (h) MUSA Claim.  For the avoidance of doubt, all Rejection Damages Claims shall be General Unsecured Claims.

53.    "General Unsecured Portion" means the portion of the MUSA Contribution in an amount equal to $1,100,000 allocated for distribution to Holders of Allowed General Unsecured Claims pursuant to Article III.

54.     "General Unsecured Share" means the portion of the New York Wheel Proceeds allocated for distribution to Holders of Allowed General Unsecured Claims pursuant to Article III, which shall be transferred by MUSA to the Debtor for distribution in accordance therewith as soon as reasonably practicable after receipt of the New York Wheel Proceeds by MUSA.  The General Unsecured Share shall be equal to the amount of the New York Wheel Proceeds; provided, however, that the General Unsecured Share shall be capped at the amount necessary to satisfy 100% of the Allowed General Unsecured Claims after accounting for the General Unsecured  Portion of the MUSA Contribution and any Sale Proceeds.

55.     "Governmental Unit" means a "governmental unit" as such term is defined on section 101(27) of the Bankruptcy Code.

56.     "Holder" means any Entity holding a Claim or an Equity Interest.

57.     "Impaired" means, with respect to any Class, a Class that is impaired as set forth in section 1124 of the Bankruptcy Code.

58.     "Insurance Policies" means any insurance policies of the Debtor (including, without limitation, the D&O Policies).

59.     "Lien" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

60.     "Local Bankruptcy Rules" means the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

61.     "Mammoet Carveout Parties" means, collectively, MUSA, Mammoet Holding B.V. (trade registration no. 3015738), and Mammoet Americas Holding Inc. (f/k/a Mammoet USA Holding, Inc.), and each of their Related Parties, including, without limitation, Mammoet Engineering BV, Mammoet Europe BV, Mammoet Global Support BV, Mammoet USA South Inc., and M-Shipping BV, and each of their Related Parties.

62.     "MUSA" means Mammoet USA North Inc.

63.     "MUSA Claim" means, collectively, the DIP Claims and the MUSA Prepetition Claim, which shall be deemed Allowed upon the occurrence of the Effective Date.

64.     "MUSA Contribution" means Cash in the total amount of (a) up to $1,100,000, consisting of the General Unsecured Portion, plus (b) the Unclassified/Unimpaired Portion, to be deposited into the Distribution Account by MUSA for the benefit of itself and each other Released Party on or before the Effective Date.

65.    "MUSA Prepetition Claim" means, collectively, the prepetition claims of MUSA, Mammoet Engineering BV, Mammoet Europe BV, Mammoet Global Support BV, Mammoet USA South Inc., and M-Shipping BV, which shall be deemed Allowed upon the occurrence of the Effective Date in the amount of $90,005,000 or such other amount as the Bankruptcy Court shall determine after notice and a hearing in a Final Order.

66.    "New York Wheel" means New York Wheel Owner LLC.

67.    "New York Wheel Causes of Action" means any and all Causes of Action of the Debtor against New York Wheel and any and all related Causes of Action, including all Causes of Action asserted by the Debtor in the New York Wheel Litigation against New York Wheel or any other Party.

68.    "New York Wheel Claim" means, collectively, all claims of New York Wheel against the Debtor.

69.    "New York Wheel Components" means, collectively, all physical components of the New York Wheel Project.

70.    "New York Wheel Litigation" means the case styled *New York Wheel Owner LLC v. Mammoet-Starneth LLC, et al.*, Case No. 1:17-cv-04026-JMF, pending in the United States District Court for the Southern District of New York.  The New York Wheel Litigation shall resume in the United States District Court for the Southern District of New York no earlier than 30 days after the Effective Date and no later than 120 days after the Effective Date, in each case unless the United States District Court for the Southern District of New York orders otherwise.  In the event that New York Wheel seeks to extend the February 5, 2019 deadline in place as of the date of this Plan to resume the New York Wheel Litigation, New York Wheel shall apply to the United States District Court for the Southern District of New York for a continuance of that deadline, and MUSA (and, to the extent necessary, the Debtor) shall consent to such application to the United States District Court for the Southern District of New York, provided, however, that such application shall not request an extension beyond 120 days after the Effective Date.

71.    "New York Wheel Proceeds" means any proceeds of the New York Wheel Causes of Action, net of the fees, costs, and expenses of MUSA and any professionals or experts retained by MUSA attendant to the negotiation, litigation, prosecution, settlement, or other pursuit and/or resolution of the New York Wheel Causes of Action.  For the avoidance of doubt, no share in or right to any New York Wheel Proceeds, including any share in or right to the General Unsecured Share, may be transferred or assigned by any Entity; provided, however, that any Entity with a right to receive any New York Wheel Proceeds under this Plan shall be entitled to keep, retain, transfer, use, or otherwise dispose of such proceeds upon their receipt by such Entity.

72.    "New York Wheel Project" means the subject matter of DBA.

73.    "Other Priority Claim" means any Claim other than an Administrative Claim or Priority Tax Claim that is entitled to priority in payment pursuant to section 507(a) of the

Bankruptcy Code.

74.     "<u>Person</u>" means a "person" as such term is defined in section 101(41) of the Bankruptcy Code.

75.     "<u>Petition Date</u>" means December 13, 2017.

76.     "<u>Plan</u>" means this plan proposed by the Debtor, including all exhibits, addenda, schedules or other attachments hereto, and the Plan Supplement, each of which is incorporated herein by reference, as may be amended, modified, or supplemented from time.

77.     "<u>Plan Settlement Term Sheet</u>" means the Settlement Term Sheet between and among (i) the Debtor, (ii) New York Wheel, and all of its affiliates and subsidiaries, and (iii) (a) MUSA, (b) Mammoet Holding B.V. (trade registration no. 30105738), and (c) Mammoet Americas Holding, Inc. (f/k/a Mammoet USA Holding, Inc.) submitted for approval by the Bankruptcy Court at docket number 553.

78.     "<u>Plan Supplement</u>" means a document or documents that may subsequently be filed by the Debtor, prior to the Confirmation Hearing, for incorporation into the Plan.

79.     "<u>Priority Tax Claim</u>" means any Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

80.     "<u>Pro Rata Share</u>" means the ratio (expressed as a percentage) of the amount of an Allowed Claim to the sum of (a) the amount of all Allowed Claims in a particular Class (or group of Classes, as applicable) on a Distribution Date and (b) the estimated amount of all remaining Disputed Claims in such Class (or group of Classes, as applicable) as determined by the Bankruptcy Court.

81.     "<u>Professional</u>" means any Person or Entity, other than the Balloting Agent: (a) employed in the Chapter 11 Case under a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and compensated for services rendered prior to or on the Effective Date under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (b) for which the Bankruptcy Court has allowed compensation and reimbursement of expenses under section 503(b)(4) of the Bankruptcy Code.

82.     "<u>Professional Claim</u>" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

83.     "<u>Proof of Claim</u>" means a written proof of Claim Filed against the Debtor in the Chapter 11 Case.

84.     "<u>Rejection Damages Claim</u>" means an unsecured Claim arising from the rejection by the Debtor of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

85.    "Rejection Damages Claim Bar Date" means the date that is (a) with respect to an Executory Contract or Unexpired Lease that is rejected under the Plan, thirty (30) days after the Effective Date, or (b) with respect to an Executory Contract or Unexpired Lease that is otherwise rejected, thirty (30) days after entry of the order authorizing the rejection of such Executory Contract or Unexpired Lease.

86.    "Related Parties" means, with respect to any Person or Entity, such Person's or Entity's current and former direct and indirect equity holders, members, partners, subsidiaries, Affiliates, funds, managers, managing members, officers, directors, authorized persons, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective equity holders, members, partners, subsidiaries, Affiliates, funds, managers, managing members, officers, directors, authorized persons, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives), together with their respective successors and assigns, in each case only in their capacity as such.

87.    "Released Parties" means the MUSA and each of its and the Debtor's Related Parties, excluding Starneth.

88.    "Sale" means any sale of assets of the Debtor or its Estate pursuant to section 363(f) of the Bankruptcy Code as approved by Final Order or otherwise provided in this Plan.

89.    "Sale Proceeds" means the proceeds of any Sale reduced by (a) the costs and expenses relating to the conduct of the Sale process, the documentation, approval, and closing of the Sale, and any litigation of any ownership disputes with holders of the subject property (including holders of New York Wheel Components), including, without limitation, reasonable professional fees and expenses (including fees and expenses of the Debtor's attorneys and financial advisors), marketing and advertising costs, auction costs, and with respect to New York Wheel Components, storage costs for the period of November 2018 through and including January 2019; (b) any surcharge under the Bankruptcy Code; and (c) any amounts required to satisfy any Liens or other encumbrances attaching to such proceeds.

90.    "Schedules" means the Debtor's schedules of assets and liabilities and statements of financial affairs, Filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

91.    "Secured Claim" means any Claim that is (a) secured by a Lien on collateral, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a court order, to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) subject to a valid right of setoff under section 553 of the Bankruptcy Code.

92.    "Settlement Agreement" means the Settlement Agreement between and among (a) the Debtor, (b) MUSA, (c) Mammoet Holding B.V. (trade registration no. 30105738), (d) Mammoet Americas Holding, Inc. (f/k/a Mammoet USA Holding, Inc.), and

10

(e) New York Wheel dated May 3, 2018 [D.I. 316], as amended by the Amendment to Settlement Agreement dated September 7, 2018 [D.I. 420].

93.     "<u>Supplemental Contribution</u>" means Cash in excess of Cash on Hand in an amount necessary to pay any Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims pursuant to Article III, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan, to the extent that any of the foregoing remain unpaid in the event that the Unclassified/Unimpaired Funds are exhausted.  As set forth in Article IV, MUSA shall make Supplemental Contributions as necessary to pay all of the foregoing Claims, fees, costs, and expenses without further action, approval, or order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any Supplemental Contributions shall only be made pursuant to budgets approved by MUSA in its reasonable discretion, and MUSA shall not be required to make any Supplemental Contribution in the absence of such a budget.

94.     "<u>Starneth</u>" means Starneth LLC and Starneth B.V., and any of their current and former direct and indirect equity holders, members, partners, subsidiaries, Affiliates, funds, managers, managing members, officers, directors, authorized persons, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives, excluding the Debtor, and to the extent applicable, MUSA.

95.     "<u>Starneth Carveout Parties</u>" means, collectively, Starneth and each of its Related Parties.

96.     "<u>Unclassified/Unimpaired Funds</u>" means all Available Cash and New York Wheel Proceeds that are not earmarked for any other use and/or distribution under the Plan other than to Holders of Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims pursuant to Article III, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan.

97.     "<u>Unclassified/Unimpaired Portion</u>" means the portion of the MUSA Contribution in an amount sufficient to fully satisfy all Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims pursuant to Article III, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan, as supplemented by any Supplemental Contribution.

98.     "<u>Unexpired Lease</u>" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

99.     "<u>Unimpaired</u>" means, with respect to any Class, a Class that is not Impaired.

100.    "<u>United States</u>" means the United States of America, its agencies,

11

departments, and agents.

101.    "<u>Unused DIP Facility</u>" means any portion of the DIP Facility that remains undrawn by the Debtor and unfunded by MUSA as of the Confirmation Date.

102.    "<u>U.S. Trustee</u>" means the United States Trustee for the District of Delaware.

103.    "<u>U.S. Trustee Fees</u>" means fees owing to the U.S. Trustee arising under 28 U.S.C. § 1930, and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

104.    "<u>Voting Deadline</u>" means the date set forth in the Disclosure Statement Order.

## B.  Rules of Construction

For the purposes of the Plan: (1) any term used in capitalized form that is not defined in the Plan, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (2) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender include the masculine, feminine, and the neutral gender; (3) unless otherwise stated herein, any reference in the Plan to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (4) except as otherwise provided in the Plan, all references in the Plan to "Articles" are references to Articles of the Plan; (5) except as otherwise provided in the Plan, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) the words "includes" and "including" are not limiting; (7) any reference to an Entity or a Person as a Holder of a Claim or Equity Interest includes that Entity's or Person's successors, assigns, and Affiliates; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (10) any immaterial effectuating provisions may be interpreted by the Debtor in a manner that is consistent with the overall purpose and intent of the Plan, all without further order of the Bankruptcy Court.

## C.  Computation of Time

Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.

## D.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws that would require application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, securities, instruments, or other documents executed or delivered in connection with the Plan (except as otherwise set forth in those

documents, in which case the governing law of such documents shall control); <u>provided</u>, <u>however</u>, that governance matters relating to the Debtor shall be governed by the laws of the State of incorporation or formation thereof.

**ARTICLE II.**

**DIP CLAIM, ADMINISTRATIVE CLAIMS, PROFESSIONAL CLAIMS, PRIORITY TAX CLAIMS, AND U.S. TRUSTEE FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, any DIP Claim, Administrative Claims, Professional Claims, Priority Tax Claims, and U.S. Trustee Fees have not been classified and, therefore, are excluded from the Classes of Claims and Equity Interests set forth in Article III hereof, and shall have the following treatment:

**A. DIP Claim**

In partial consideration for the releases set forth in Article VIII of this Plan and the other terms of this Plan, MUSA consents to the treatment of its DIP Claims, together with the MUSA Prepetition Claim, as the MUSA Claim consistent with Article III(D)(5) of this Plan, conditioned upon the occurrence of the Effective Date.  MUSA reserves all rights with respect to the DIP Claims if the Effective Date does not occur on or before the Maturity Date (as defined in the DIP Facility).

**B. Treatment of Administrative Claims Other than Professional Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim, or set forth in an order of the Bankruptcy Court, such Holder of an Allowed Administrative Claim (other than Holders of Professional Claims and Claims arising under 28 U.S.C. § 1930) shall receive payment in Cash of the full unpaid amount of such Claim from the Unclassified/Unimpaired Funds: (a) if the Administrative Claim is Allowed before the Effective Date, on the Effective Date, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due, or as soon as practicable thereafter); or (b) if the Administrative Claim is Allowed on or after the Effective Date, on the date such Administrative Claim is Allowed, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due, or as soon as practicable thereafter).  On or after the Effective Date, the Debtor may settle and pay any Administrative Claim in the ordinary course of business without any further notice to any party, or action, order, or approval of the Bankruptcy Court.

**C. Administrative Claims Bar Date**

Holders of Administrative Claims that were required, but failed, to File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date will not be permitted to receive payment or participate in any distribution under the Plan on account of such Administrative Claims, and any such Claims shall be automatically disallowed, forever barred from assertion, and unenforceable against the Debtor or the Estate.

13

## D.  Professional Claims

### 1.    Final Fee Applications

All final requests for Professional Claims must be Filed no later than sixty (60) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Claims will be determined by the Bankruptcy Court.

### 2.    Professional Claims

The amount of Professional Claims owing to the Professionals will be paid in Cash to such Professionals by the Debtor within ten (10) days of the Bankruptcy Court's approval thereof from the Unclassified/Unimpaired Funds.

### 3.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, the Debtor shall pay in Cash from the Unclassified/Unimpaired Funds the legal, professional, or other fees and expenses incurred by its and the Disbursing Agent's professionals from and after the Effective Date, in the ordinary course of business, and without any further notice to any party, or action, order, or approval of the Bankruptcy Court.  Upon the Effective Date, professionals may be employed by the Debtor and the Disbursing Agent and paid in the ordinary course of business without any further notice to any party, or action, order, or approval of the Bankruptcy Court from any Unclassified/Unimpaired Funds and any Supplemental Contributions.

## E.  Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Debtor shall pay each Holder of an Allowed Priority Tax Claim, in full and final satisfaction, settlement, and release of such Allowed Priority Tax Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, the full unpaid amount of such Allowed Priority Tax Claim in Cash from the Unclassified/Unimpaired Funds on, or as soon as practicable after, the latest of: (a) the Effective Date; or (b) the date such Priority Tax Claim becomes Allowed.

## F.  U.S. Trustee Fees

On the Effective Date or as soon as practicable thereafter, the Debtor shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date from the Unclassified/Unimpaired Funds.  For the avoidance of doubt, nothing in the Plan shall release the Debtor from its obligation to pay all U.S. Trustee Fees related to this Chapter 11 Case until such case is closed, dismissed, or converted, and the Debtor will pay those fees from the Unclassified/Unimpaired Funds and any Supplemental Contributions.

# ARTICLE III.

## CLASSIFICATION, CONSOLIDATION, TREATMENT, AND VOTING OF CLAIMS AND EQUITY INTERESTS

### A. Classification of Claims and Equity Interests

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests.  A Claim or Equity Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest has not been paid, withdrawn or otherwise settled before (a) the Claims Record Date for voting purposes, or (b) the time at which distributions are made with respect to such Claims or Equity Interests pursuant to the Plan for distribution purposes.

### B. Record Date for Claims

As of the Claims Record Date, the transfer registers for each Class of Claims or Equity Interests, as maintained by the Debtor or its agent, shall be deemed closed and there shall be no further changes made to reflect any new record Holders of any such Claims or Equity Interests without the written consent of the Debtor.  The Debtor shall have no obligation to recognize any transfer of such Claims or Equity Interests occurring on or after the Claims Record Date.

### C. Summary of Classification and Class Identification

Except for Claims addressed in Article II, all Claims and Equity Interests are classified in the Classes set forth in this Article III in accordance with section 1122 of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest, or a portion thereof, qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest, or portion thereof, is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  The Debtor reserves the right to modify the Plan in accordance with Article X hereof.

The following table assigns each Class a number designation for purposes of identifying each separate Class, a description of whether that Class is Impaired, and the voting rights of each Class:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Other Priority Claims | Unimpaired | No (presumed to accept) |
| 2 | Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | New York Wheel Claim | Impaired | Yes |
| 5 | MUSA Claim | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

**D. Treatment of Claims and Equity Interests**

  1.    **Class 1 – Other Priority Claims**

  (a)    <u>Classification</u>:  Class 1 consists of all Other Priority Claims.

  (b)    <u>Treatment</u>:    Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, such Holder shall receive Cash from the Unclassified/Unimpaired Portion of the MUSA Contribution equal to the amount of such Allowed Other Priority Claim on or as soon as practicable after the latest of (x) the Effective Date, (y) the date that such Claim becomes Allowed, and (z) a date agreed to by the Debtor and the Holder of such Claim.

  2.    **Class 2 – Secured Claims**

  (a)    <u>Classification</u>:  Class 2 consists of all Secured Claims.

  (b)    <u>Treatment</u>:    Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment, such Holder shall receive, at the sole option of the Debtor:

    (i)    on the Effective Date, such Holder of an Allowed Secured Claim shall (i) retain a Lien securing such Allowed Secured Claim and (ii) receive deferred Cash payments from the Unclassified/Unimpaired Funds and any Supplemental Contributions totaling at least the value of such Allowed Secured Claim as of the Effective Date; or

    (ii)    on the Effective Date, the collateral securing such Allowed Secured Claim shall be surrendered to the Holder of such Allowed Secured Claim in full satisfaction of such Allowed Secured Claim; or

    (iii)    such Holder of an Allowed Secured Claim shall be paid, in Cash, from the Unclassified/Unimpaired Funds, an amount equal to such Holder's Allowed Secured Claim on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) entry of a Final Order Allowing such Claim as a Secured

16

Claim.  To the extent the collateral securing an Allowed Secured Claim has been or is to be sold pursuant to an order of the Bankruptcy Court, the amount to be paid to the Holder of such Allowed Secured Claim pursuant to the preceding sentence shall be net of the costs of sale of such collateral and otherwise subject to the rights of the Debtor pursuant to section 506(c) of the Bankruptcy Code.

3. **Class 3 – General Unsecured Claims**

   (a)  <u>Classification</u>:  Class 3 consists of all General Unsecured Claims.

   (b)  <u>Treatment</u>:   Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, such Holder shall receive:

   (i)   Cash equal to such Holder's Pro Rata Share (based on the total amount of Allowed General Unsecured Claims) of the General Unsecured Portion of the MUSA Contribution, up to but not to exceed 100% of the amount of such Holder's Allowed Claim, on or as soon as practicable after the latest of (a) the Effective Date, (b) the date that such General Unsecured Claim becomes Allowed, and (c) a date agreed to by the Debtor and the Holder of such General Unsecured Claim (the "<u>Initial GUC Distribution</u>"); and

   (ii)  Cash equal to such Holder's Pro Rata Share (based on the total amount of Allowed General Unsecured Claims) of (i) any Sale Proceeds in this Chapter 11 Case plus (ii) the General Unsecured Share of any New York Wheel Proceeds, up to but not to exceed 100% of the amount of such Holder's Allowed Claim when taken together with such Holder's share of the Initial GUC Distribution, on or as soon as practicable after the latest of (a) the Effective Date, (b) the date that such General Unsecured Claim becomes Allowed, (c) a final determination of all claims asserted between the Debtor and New York Wheel in the New York Wheel Litigation (including the New York Wheel Causes of Action), and (d) a date agreed to by the Debtor and the Holder of such General Unsecured Claim.

4. **Class 4 – New York Wheel Claim**

   (a)  <u>Classification</u>:  Class 4 consists of the New York Wheel Claim.

   (b)  <u>Treatment</u>:  The New York Wheel Claim shall be treated as follows:

(i)     The New York Wheel Claim shall be allowed solely for the purposes of voting to accept or reject this Plan in the amount of $1.  Such limited allowance shall be without prejudice to any rights, Claims, or defenses of any party to the New York Wheel Litigation, including the Debtor, MUSA, and New York Wheel, and shall not be admissible for any purpose in the New York Wheel Litigation.

(ii)    The New York Wheel Claim shall be Allowed in the amount (if any) and nature to be determined based on the outcome of the New York Wheel Litigation in the United States District Court for the Southern District of New York.  New York Wheel's rights to the Sale Proceeds from any Sale of the New York Wheel Components, including based on New York Wheel's asserted ownership rights with respect to the New York Wheel Components and any other asserted rights and interests related to the New York Wheel Project, including asserted intellectual property rights, shall be determined in the New York Wheel Litigation.

(iii)   On the Effective Date, any and all distributions to which New York Wheel may be entitled on account of the New York Wheel Claim shall be deemed fully and irrevocably waived, and New York Wheel shall not seek or receive any recovery from the Debtor or its Estate on account of the New York Wheel Claim; provided, however, that (i) the right of New York Wheel to receive any and all Sale Proceeds of any Sale of any New York Wheel Components arising from New York Wheel's asserted ownership of such components (to the extent determined by a Final Order in the New York Wheel Litigation) and any other asserted rights, including asserted intellectual property rights (to the extent determined by final order in the New York Wheel Litigation), and (ii) the right of New York Wheel to any and all recoveries on account of the Alter Ego Claims and Direct Claims (both as defined below), if any, are expressly preserved exclusively for New York Wheel.

Notwithstanding anything in this Plan to the contrary, including the releases contained in Article VII herein, New York Wheel shall retain all rights to all claims (and the proceeds thereof) alleged or to be alleged by New York Wheel against the Carveout Parties in the New York Wheel Litigation, including the claims as to which the Carveout Parties may be liable to New York Wheel under alter ego theories (the "Alter Ego Claims") and the claims as to which the Carveout Parties may be directly liable to New York Wheel (the "Direct Claims").

18

Notwithstanding anything in this Plan to the contrary, (i) nothing shall preclude New York Wheel from asserting and pursuing (a) any claims as to which it contends the Carveout Parties may be liable to New York Wheel under alter ego theories that have been asserted in the New York Wheel Litigation, together with any modifications or amendments thereto made to address additional facts about the relationship between New York Wheel, the Debtor, and the Mammoet Carveout Parties and the New York Wheel Project that have developed since the filing of the Second Amended Complaint by New York Wheel in the New York Wheel Litigation on November 28, 2017, including but not limited to the fact that it does not appear that the New York Wheel Project will not be constructed, and (b) any other claims as to which it contends the Carveout Parties may be liable to New York Wheel under alter ego theories that are specific to New York Wheel, including, without limitation, claims of breach of contract/promissory estoppel and fraud on New York Wheel, except to the extent that New York Wheel would not have been entitled to assert such claims in the absence of the Debtor's Chapter 11 Case, and (ii) the Mammoet Carveout Parties and the Debtor agree not to assert or argue that any claims referenced in clause (i) of this paragraph have been released or are the property of the Debtor's Estate.

For the avoidance of doubt, New York Wheel shall be precluded from asserting and pursuing any claims as to which it contends the Mammoet Carveout Parties may be liable to New York Wheel under alter ego theories that New York Wheel would not have been entitled to assert in the absence of the Debtor's Chapter 11 Case, and any such claims (*i.e.*, those that could not have been asserted by New York Wheel in the absence of the bankruptcy) are released subject to and as provided in this Plan. Furthermore, other than as specifically provided in the Plan Settlement Term Sheet and in this Plan, the Carveout Parties do not waive, and shall retain the right to assert, any and all defenses they may have with respect to any claims New York Wheel asserts or pursues against them, including without limitation any jurisdictional defenses that have not otherwise been waived, and neither the Plan Settlement Term Sheet nor this Plan shall serve as a consent to jurisdiction by the Carveout Parties in any United States court with respect to any claims New York Wheel asserts or pursues against them.

All rights, claims, and remedies of New York Wheel and the Mammoet Carveout Parties against each other are expressly reserved and preserved, and the releases and injunctions set forth in this Plan, including the releases set forth in Article VIII(E)(2), shall be and hereby are qualified as follows: (i) nothing in this Plan, including, without limitation, the releases contained herein, shall form the basis for any argument, and the Debtor and the Mammoet Carveout Parties agree not to argue, that the Carveout Parties have been released from the Alter Ego Claims or the Direct

Claims, (ii) nothing in this Plan shall form the basis for any argument, and the Debtor and the Mammoet Carveout Parties agree not to argue, that the Debtor, the Carveout Parties, or any of their Related Parties or any of the Debtor's creditors other than New York Wheel have the right to share in any recovery on account of the Alter Ego Claims or the Direct Claims, (iii) nothing in this Plan, including, without limitation, the releases contained herein, shall form the basis for any argument, and the Debtor and the Mammoet Carveout Parties agree not to argue, that New York Wheel's right to pursue the Alter Ego Claims or the Direct Claims has in any way been impaired as a result of the Plan, New York Wheel's treatment under the Plan, or any act or event in connection with the Plan or the Chapter 11 Case, including, without limitation, any argument that any substantive requirement to pursue such claims has been waived, released, or discharged (including, for example, any argument that breach of the DBA has been waived, released, or discharged) and any argument under Bankruptcy Rule 7019 or Rule 19 of the Federal Rules of Civil Procedure that the Alter Ego Claims or the Direct Claims cannot be pursued for failure to join indispensable parties or that the New York Wheel Litigation should not occur in the United States District Court for the Southern District of New York, (iv) New York Wheel shall retain the right to assert any and all defenses and rights of setoff to the Assigned New York Wheel Claims (as defined below), and (v) the assignment of the Assigned New York Wheel Claims includes the right to use such claims both offensively and in defense of any Alter Ego Claims.

In the event that New York Wheel commences its own bankruptcy case, it shall consent to a lifting of the automatic stay to allow the matters and issues in this Chapter 11 Case and before the United States District Court for the Southern District of New York in the New York Wheel Litigation to proceed to a determination on the merits and will not seek to challenge the settlements in the Plan Settlement Term Sheet or in the original Settlement Agreement that expressly survive a Termination Event (as defined in the Settlement Agreement).

The Debtor assumes and confirms the terms and provisions of, including the Debtors' obligations under, the Plan Settlement Term Sheet, which is hereby incorporated in its entirety into this Plan.

5. **Class 5 – MUSA Claim**

   (a) <u>Classification</u>:  Class 5 consists of the MUSA Claim.

   (b) <u>Treatment</u>:  On the Effective Date, all New York Wheel Causes of Action shall be deemed assigned to the MUSA (the "<u>Assigned New York Wheel Claims</u>").  MUSA shall be entitled, in its sole discretion, and at its sole expense, to negotiate, litigate, prosecute, settle, or otherwise pursue and/or resolve the New York Wheel Causes of Action without further notice to

any party, or action, approval, or order of the Bankruptcy Court; provided, however, that under no circumstances shall MUSA be required to negotiate, litigate, prosecute, settle, or otherwise pursue and/or resolve the New York Wheel Causes of Action.  For the avoidance of doubt, MUSA shall be the owner of, and entitled to keep, retain, transfer, use, or otherwise dispose of, all New York Wheel Proceeds other than the General Unsecured.

Notwithstanding anything in this Plan to the contrary, (i) New York Wheel shall retain the right to assert any and all defenses and rights of setoff to the New York Wheel Causes of Action assigned to MUSA pursuant to this Article III and (ii) the assignment of the New York Wheel Causes of Action to MUSA pursuant to Article III includes the right to use the New York Wheel Causes of Action both offensively and defensively, including in defense to any alter ego Claims asserted against MUSA or any other party.

For the avoidance of doubt, MUSA may prosecute and/or settle the New York Wheel Causes of Action and/or defenses asserted by the Debtor, MUSA, and/or Related Parties of MUSA to any claims asserted by New York Wheel in the New York Wheel Litigation and any related proceedings in its sole discretion and without any motion to the Bankruptcy Court.  MUSA does not owe any fiduciary or other duties to potential recipients of any net proceeds of the New York Wheel Causes of Action.  MUSA may pay as incurred, and shall have no obligation to seek court approval of, its fees, expenses, and costs of professionals and experts in litigation with New York Wheel.

For the avoidance of doubt, the assignment of the Assigned New York Wheel Claims to MUSA and the releases contained herein shall be in full and final satisfaction of any and all of Mammoet Carveout Parties' claims against the Debtor, including the MUSA Prepetition Claim, and the Mammoet Carveout Parties shall not otherwise receive a distribution under this Plan.

6.    **Class 6 – Equity Interests**

(a)    Classification:  Class 6 consists of all Equity Interests in the Debtor.

(b)    Treatment:  Holders of Equity Interests in the Debtor shall not receive any distribution under this Plan on account of such Equity Interests.  All Equity Interests in the Debtor shall be deemed canceled, eliminated and extinguished on the later of (a) the date this Chapter 11 Case is closed by the Bankruptcy Court and (b) the date the Debtor has performed all of its obligations under this Plan.

21

### E.  Distributions on Account of Allowed Claims

Unless otherwise specifically provided in this Plan, Holders of Allowed Claims shall receive the distributions provided for such Allowed Claims by Articles II and III, if any, on or as soon as reasonably practicable after the applicable Distribution Dates set forth therein.   All distributions required under the Plan shall be paid by the Disbursing Agent from the Distribution Account.  In the event of, and notwithstanding, any objection or other challenge to the MUSA Prepetition Claim, MUSA shall receive all New York Wheel Causes of Action on the Effective Date pursuant to Article III(D)(5) on account of the portion of the MUSA Claim comprising the DIP Claims.

### F.  Excess Class 3 Funds

To the extent that (i) the General Unsecured Portion of the MUSA Contribution, after accounting for the distribution of any Sale Proceeds, exceeds the total amount of the Allowed General Unsecured Claims or (ii) the amount of any New York Wheel Proceeds, after payment of any General Unsecured Share, exceeds the Allowed amount of the MUSA Claim, such excess amounts shall revert to the Debtor for payment of any Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan.  To the extent all such Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan are otherwise satisfied, the amounts referred to in this paragraph shall revert back to MUSA consistent with Article III(G).

### G.  MUSA Residual Interest

MUSA shall retain a residual interest in the MUSA Contribution, any Supplemental Contribution, and the New York Wheel Proceeds, and the Disbursing Agent shall return to MUSA any portion of the MUSA Contribution, any Supplemental Contribution, or the New York Wheel Proceeds remaining in the Distribution Account after all distributions required by this Plan have been made on the later of (a) the date this Chapter 11 Case is closed by the Bankruptcy Court and (b) the date the Debtor has performed all of its obligations under this Plan.

### H.  Unused DIP Facility

The DIP Lender, in its sole discretion, may elect to advance some or all of the Unused DIP Facility for any Plan-related purposes requested by the Debtor to which the DIP Lender consents.  To the extent that any such advance occurs prior to the Effective Date, any Claim of the DIP Lender arising from such advance shall be treated consistent with Article II(A).  To the extent that any such advance occurs after the Effective Date, any Claim of the DIP Lender arising from such advance shall be deemed waived, released, and discharged upon advancement of the funds.

**I. Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**J. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims other than Class 5.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.

## ARTICLE IV.

## IMPLEMENTATION OF THE PLAN

**A. Cancellation of Documents Evidencing Claims and Equity Interests**

Except as otherwise set forth herein or in the Confirmation Order, and except for purposes of evidencing a right to distributions under, or effectuating, the Plan, on the Effective Date, all notes, stock, instruments, certificates, indentures, guarantees, and other documents or agreements evidencing a Claim against the Debtor will be deemed automatically cancelled with respect to the Debtor and shall be of no further force or effect as against the Debtor, whether such document is surrendered for cancellation or not, and the Debtor shall not have any liability with respect thereto except as set forth in the Plan.

All notes, stock, instruments, certificates, indentures, guarantees, and other documents or agreements evidencing an Equity Interests in the Debtor shall be treated as set forth in Article III, and upon their deemed cancellation, shall be of no further force or effect as against the Debtor, whether such document is surrendered for cancellation or not, and the Debtor shall not have any liability with respect thereto.

**B. Corporate Action**

The entry of the Confirmation Order shall constitute authorization for the Debtor, the Disbursing Agent, and MUSA, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized, approved, and/or ratified, as applicable, by the Bankruptcy Court without any requirement of further approval, act, or action by the Bankruptcy Court, the Holders of Claims or Equity Interests, or any other party, or under any applicable law, order, rule, or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by the Plan, (b) the making of distributions under the Plan, (c) the implementation of all settlements and

compromises as set forth in or contemplated by the Plan, and (d) the execution, delivery, filing, and/or recording of any contracts, agreements, instruments, or other documents contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan).

Consistent with Article II of this Plan, the foregoing authorization also includes authorization for the Debtor to retain, employ, and pay any professionals, including, but not limited to, attorneys, consultants, and financial advisors, the Debtor believes necessary to assist the Debtor in effectuating the terms of this Plan and fulfilling the Debtor's obligations thereunder, on whatever fee arrangement the Debtor deems appropriate, and no such professionals shall be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred.  For the avoidance of doubt, this authorization also extends to the Disbursing Agent, the professionals of which shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred.

Upon the later of (a) the date this Chapter 11 Case is closed by the Bankruptcy Court and (b) the date the Debtor has performed all of its obligations under this Plan, the persons acting as managers, directors, or officers of the Debtor prior to such date shall have no further authority, duties, responsibilities, or obligations relating to or arising from (i) operating the Debtor or (ii) the Chapter 11 Case.

### C. Sources of Cash for Distribution and Wind Down

All Cash necessary to make payments and distributions under the Plan shall be obtained from Available Cash, any New York Wheel Proceeds, any Supplemental Contribution, and any advances under Article III(H) of this Plan.

All Cash necessary to wind down the Estate after the Effective Date shall be provided to the Debtor by MUSA pursuant to a budget to be agreed to by the Debtor and MUSA.

MUSA shall make Supplemental Contributions as necessary to pay any Allowed Administrative Claims (including Allowed Professional Claims), Allowed Priority Tax Claims, U.S. Trustee Fees, Allowed Other Priority Claims, and to the extent applicable, Allowed Secured Claims pursuant to Article III, as well as all post-Effective Date fees, costs, and expenses of the Debtor and the Disbursing Agent provided for under this Plan, to the extent that any of the foregoing remain unpaid in the event that the Unclassified/Unimpaired Funds are exhausted, without further action, approval, or order of the Bankruptcy Court; provided, however, that any Supplemental Contributions shall only be made pursuant to budgets approved by MUSA in its reasonable discretion, and MUSA shall not be required to make any Supplemental Contribution in the absence of such a budget.

24

### D. Revesting of Assets

On the Effective Date, any Estate interests in property, former property, or proceeds of property or former property of the Debtor, including but not limited to any Sale Proceeds, the New York Wheel Causes of Action, and the Debtor's books and records, shall revest in the Debtor for use and/or distribution in accordance with the terms of the Plan. For the avoidance of doubt, the New York Wheel Causes of Action shall be deemed assigned to MUSA pursuant to the terms of this Plan after revesting in the Debtor on the Effective Date.

### E. Preservation of Causes of Action

The Debtor expressly reserves and preserves the New York Wheel Causes of Action, which shall be deemed assigned to MUSA as of the Effective Date pursuant to Article III. MUSA shall have standing and be authorized to negotiate, litigate, prosecute, settle, or otherwise pursue and/or resolve the New York Wheel Causes of Action in its sole discretion, and at its sole expense, in a forum of its choice.

The Debtor further expressly reserves and preserves all Causes of Action against any party that (i) is in possession of (a) property of the Debtor or the Estate, (b) property in which the Debtor or the Estate asserts an interest, or (c) property that otherwise is, or as been, disposed of by, or in accordance with, an order of the Bankruptcy Court and (ii) refuses to transfer possession of such property to (x) the Debtor, (y) any purchaser of such property, or (z) a third party agreed to by the Debtor or purchaser, as applicable, upon demand by the Debtor or purchaser, as applicable.

The Debtor further expressly reserves and preserves all Causes of Action against any party that asserted or asserts any ownership interest in any assets sought to be sold or sold pursuant to section 363 of the Bankruptcy Code in accordance with any order of the Bankruptcy Court entered in this Chapter 11 Case, in the context of a Sale or otherwise.

All Causes of Action of the Debtor and the Estate other than the New York Wheel Causes of Action and the other Causes of Action preserved by this Article IV(E) or the other provisions of this Plan shall be deemed waived, relinquished, and released in their entirety as of the Effective Date.

Notwithstanding anything to the contrary in this Plan, the Debtor's rights to use any and all Causes of Action as affirmative defenses, including setoff and/or recoupment, are expressly reserved and preserved.

### F. Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp, real estate transfer, mortgage reporting, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the

payment of any such tax or governmental assessment.

### G. D&O Policies

Notwithstanding anything to the contrary contained herein or in the Confirmation Order, Confirmation shall not impair or otherwise modify (a) any obligations arising under any D&O Policies, or (b) any person's rights to receive any benefits under such D&O Policies. In addition, after the Effective Date, the Debtor shall not terminate or otherwise reduce coverage under any D&O Policy, including, without limitation, any "tail policy" in effect as of the Effective Date, and all Persons shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such Persons remain affiliated with the Debtor after the Effective Date.

### H. Abandonment and Destruction of Property

The Debtor shall be authorized to abandon or destroy any and all property that revests in the Debtor and is not earmarked for distribution under the terms of the Plan in its discretion without further notice to any party, or action, order, or approval of the Bankruptcy Court; provided, however, that the Debtor's books and records shall be treated as set forth in Article XII.

### I. Dissolution of the Debtor

On and after the Effective Date, the Debtor shall be authorized to take all actions necessary to wind down and dissolve itself under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, notwithstanding any applicable consent requirements or other restrictions contained in any financing agreements or other debt documents to which any Debtor is a party, and to pay all reasonable costs and expenses in connection with such wind down and dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Notwithstanding the foregoing, the Debtor shall not dissolve itself until the later of (a) the date this Chapter 11 Case is closed by the Bankruptcy Court and (b) the date the Debtor has performed all of its obligations under this Plan.

### J. Closing the Chapter 11 Case

The Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules after the Debtor has fulfilled all of its obligations under the Plan. For the avoidance of doubt, the Chapter 11 Case shall not be closed before the Debtor has fulfilled all of its obligations under the Plan and obtained authority to close the case as set forth in this paragraph.

## ARTICLE V.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

### A.  Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided in this Plan, each Executory Contract and Unexpired Lease not previously assumed or rejected shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) has been previously assumed by the Debtor by Final Order or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (b) is the subject of a motion to assume pending as of the Effective Date; or (c) is otherwise assumed pursuant to the terms of this Plan.  For the avoidance of doubt, the Plan Settlement Term Sheet is expressly assumed pursuant to the Plan.  The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease under the Plan must be asserted by Filing a Proof of Claim with the Bankruptcy Court and serving such Proof of Claim on the Debtor no later than thirty (30) days after the Effective Date.  Proof of Claim forms may be obtained at the following website:  http://www.uscourts.gov/forms/bankruptcy-forms/proof-claim-0.  For the avoidance of doubt, nothing in this Plan shall extend any Bar Date applicable to any Claim arising from the rejection of an Executory Contract or Unexpired Lease prior to the Effective Date or revive any Claim subject to any such Bar Date.

All Allowed Claims arising from the rejection of Executory Contracts or Unexpired Leases will be Rejection Damages Claims, which shall be classified as General Unsecured Claims and treated in accordance with the terms of Article III hereof.  The deadline to object to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, shall be the Claims Objection Deadline.

### B.  Insurance Policies

Notwithstanding any other provision of the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code and in accordance with the terms of the Plan, any Insurance Policies shall be assumed by the Debtor, to the extent permitted by law, unless any Insurance Policy was previously rejected by the Debtor pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date.

Coverage for defense and indemnity under any such Insurance Policy, including the D&O Policies, shall remain available to all Entities within the definition of "Insured" in any such Insurance Policy, including any D&O Policies.  Notwithstanding anything to the contrary herein, nothing in the Plan shall affect any party's rights under any Insurance Policy.

**C. Pre-existing Obligations to the Debtor Under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such Executory Contract or Unexpired Lease.

**D. Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request, pursuant to section 365(d)(4) of the Bankruptcy Code, to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases.

**E. No Change in Control**

The consummation of the Plan or the assumption of any Executory Contract or Unexpired Lease is not intended to, and shall not, constitute a change in ownership or change in control under any financial instrument; loan or financing agreement; Executory Contract or Unexpired Lease; or contract, lease, or agreement in existence on the Effective Date to which the Debtor is a party.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A. Applicability**

The provisions of this Article VI shall govern distributions to the extent not otherwise provided for in the Plan.

**B. Interim Distributions**

The Disbursing Agent is authorized but not required to make interim distributions to Holders of Allowed Claims in accordance with the terms of Article III; provided, however, that any such distributions shall only be made if the Disbursing Agent retains amounts from the Sale Proceeds and applicable funds necessary to meet contingent liabilities with respect to the Class receiving the interim distribution.

**C. Final Distributions**

Notwithstanding anything else in the Plan, upon the settlement and satisfaction of all Administrative Claims (including Professional Claims), Priority Tax Claims, Secured Claims, Other Priority Claims, and General Unsecured Claims, and the completion of the prosecution and/or settlement of all Claims Objections and New York Wheel Causes of Action, the Disbursing Agent shall distribute, as soon as reasonably practicable, all remaining portions of the MUSA Contribution, New York Wheel Proceeds, and any other Cash in the Distribution Account in accordance with Article III.

### D. Distributions on Account of Claims Allowed After the Effective Date

If and to the extent that there are Disputed Claims, distributions on account of any Disputed Claims shall be made to the extent such Claims are Allowed in accordance with the provisions set forth in Article VII hereof with respect to dispute resolution. Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made from the applicable funds as soon as practicable after the Disputed Claim becomes an Allowed Claim.

Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### E. Disbursing Agent

#### 1. Generally

Except as otherwise set forth in the Plan, all distributions under the Plan shall be made by the Disbursing Agent. Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

#### 2. Rights and Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, securities, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated by the Plan to Holders of Allowed Claims; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

#### 3. Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) shall be paid in Cash from the Unclassified/Unimpaired Funds and any Supplemental Contributions without further notice to any party, or action, approval, or order of the Bankruptcy Court from Available Cash and any Supplemental Contributions.

### F. Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### 1. Delivery of Distributions

If a Creditor holds more than one Allowed Claim in any one Class, all Allowed Claims of the Creditor in a single Class will be aggregated into one Allowed Claim and one distribution

will be made with respect to the aggregated Allowed Claim.

2.    **Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Claims have been Allowed or expunged. Any distributions arising from property distributed to Holders of Allowed Claims in a Class and made to such Holders under the Plan shall be made also, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such distributions were earlier made to Holders of Allowed Claims in such Class. No Disputed Claim shall accrue interest on or after the Petition Date on account of such Claim.

3.    **Undeliverable Distributions and Unclaimed Property**

In the event that any distribution to a Holder of an Allowed Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable date of distribution. After such date, all unclaimed property or interests in property shall revert to the Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) for distribution in accordance with Article III, and the Claim of any Holder to such property or interest in property shall be deemed released, settled, compromised, and forever barred.

**G. Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed upon it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Disbursing Agent for payment of any such withholding tax obligations and, if the Disbursing Agent fails to withhold with respect to any such Holder's distribution, and is later held liable for the amount of such withholding, the Holder shall reimburse the Disbursing Agent. Notwithstanding any provision in the Plan to the contrary, the Disbursing shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such

30

distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the Holder complete the appropriate Form W-8 or Form W-9, as applicable to each Holder.  If the Holder fails to comply with such a request within six months, such distribution shall be deemed an unclaimed distribution pursuant to this Article VI.  Finally, Disbursing Agent reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

## H.  Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for federal income tax purposes) of such Claims, and then, to the extent the consideration exceeds the principal amount of such Claims, to any portion of such Claims for accrued but unpaid interest.

## I.  Claims Paid or Payable by Third Parties

Except as otherwise provided herein, the Debtor shall reduce a Claim, and such Claim shall be disallowed, without a Claims Objection having to be Filed and without any further notice to any party, or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Debtor.  To the extent a Holder of a Claim (i) receives a distribution under the Plan on account of such Claim and receives payment from a party that is not the Debtor on account of such Claim, and (ii) the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim, the Holder shall, within two weeks of receipt thereof, repay or return to the Debtor the portion of the Plan distribution (up to the full amount of the Plan distribution) that, together with the payment from the third party, exceeds 100% of the Allowed amount of the Claim.  Any and all rights of the Debtor to seek return or repayment of a distribution under the Plan from the Holder of a Claim on account of payment of such Claim by a party that is not the Debtor are expressly reserved.

No distributions under the Plan shall be made on account of any Allowed Claim that is payable by a third party, including pursuant to one of the Debtor's Insurance Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or Insurance Policy. To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then upon (i) execution such agreement and (ii) the Debtor or the Disbursing Agent, if applicable, receiving notice thereof, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to any party, or action, order, or approval of the Bankruptcy Court.

## J.  Distributions Free and Clear

Except as otherwise provided herein, any distributions under the Plan shall be free and clear of any Liens, Claims, and encumbrances, and no other Entity, including the Debtor, shall have any interest (legal, beneficial or otherwise) in property of the Estate distributed pursuant to the Plan.

### K.  Not Securities; Section 1145 Exemption

The respective rights of the Holders of Claims arising under the Plan are not intended to be "securities" under applicable laws, but the Debtor does not represent or  warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If such rights constitute securities, the Debtor intends for the exemption from registration provided by section 1145 of the Bankruptcy Code and under applicable securities laws to apply to their issuance under the Plan.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.  Applicability

The provisions of this Article VII shall govern the resolution of Disputed Claims to the extent not otherwise provided for in the Plan.

### B.  Allowance of Claims

On or after the Effective Date, the Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim (a) deemed Allowed as of the Effective Date or (b) assigned, waived, relinquished, exculpated, released, compromised, settled, or Allowed in the Plan or in a Final Order.  Except as otherwise provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed (i) under the Plan or the Bankruptcy Code or (ii) by Final Order of the Bankruptcy Court, including the Confirmation Order.

### C.  Prosecution of Objections to Claims

On or after the Effective Date, the Debtor will have the authority to: (a) consistent with section 502(a) of the Bankruptcy Code, File, withdraw, or litigate to judgment, objections to Claims and (b) settle or compromise any Disputed Claim subject to approval by the Bankruptcy Court (or decline to do either of the foregoing).

### D.  Claims Estimation

The Debtor may request that the Bankruptcy Court estimate any disputed, contingent, or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  Except as set forth below with respect to reconsideration under section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions.  If the

RLF1 20966245v.1

estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### E.   Expungement or Adjustment of Claims Without Objection

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be marked deemed satisfied, adjusted or expunged (as applicable) by the Debtor without a Claims Objection having to be Filed and without any further notice to any party, or action, order or approval of the Bankruptcy Court.

### F.   Deadline to File Claims Objections

Any objections to Claims shall be Filed by no later than the applicable Claims Objection Deadline.

### G.   Disallowance of Untimely Claims

**Except as provided herein or otherwise agreed by the Debtor, any and all Holders of Proofs of Claim filed after the applicable Bar Date shall not be treated as creditors for purposes of voting and distribution pursuant to Bankruptcy Rule 3003(c)(2) unless on or before the Voting Deadline or the Confirmation Date, as the case may be, such late Proofs of Claim are deemed timely filed by a Final Order of the Bankruptcy Court.**

### H.   Amendments to Claims

On or after the Effective Date, a Claim may not be Filed or amended without prior authorization of the Bankruptcy Court or the Debtor, and any such new or amended Claim Filed without such prior authorization shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VIII.

## RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim,

satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert or otherwise transfer to the Debtor and its respective successors and assigns.

### B. Term of Bankruptcy Injunctions or Stays

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### C. Confirmation Injunction

**Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtor; provided, however, that, upon confirmation of the Plan, the occurrence of the Effective Date, and the distributions provided for under the Plan, the holders of Claims and Equity Interests may not seek payment or recourse against or otherwise be entitled to any distribution from the Estate except as expressly provided in the Plan.**

**Except as otherwise provided in the Plan, or to the extent necessary to enforce the terms and conditions of the Plan, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Entities who have held, hold or may hold Claims against or Equity Interests in the Debtor or the Estate are, with respect to any such Claims or Equity Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtor, the Estate or any of their assets, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtor or the Estate, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or any of their assets, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Debtor or the Estate, or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, or any of their assets, or any direct or indirect transferee of any property of, or successor in interest to, the Debtor or the Estate, or any property of any such transferee or successor; (iv) commencing, conducting or continuing in any manner or in any place, any suit, action, or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, cause of action, interest, or remedy released or to be released, satisfied, or otherwise addressed pursuant to the Plan, including, but not limited to, through the releases and exculpations provided under the Plan; (v) acting or proceeding in any manner, and in any place whatsoever, that does not conform to or**

34

comply with the provisions of this Plan to the fullest extent permitted by applicable law; and (vi) commencing, conducting, or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms of this Plan.

The injunctions in Articles VIII(B) and (C) shall extend for the benefit of any successor of the Debtor, and to any property or interest in property subject to this Plan.

**D. Releases by the Debtor**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, including the services of the Released Parties to formulate the Plan and facilitate the transactions contemplated thereby, and with respect to MUSA, the MUSA contribution, on and after the Effective Date, the Released Parties are deemed released by the Debtor and the Estate from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of or by the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor and the Estate or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or interest or other Entity, based on, attributable to, or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale, of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and interests before or during the Chapter 11 Case, any Sale, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents related to the Plan, the direct or indirect operation or management of the Debtor, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except to the extent of claims against, or liabilities of, any Entity resulting from any act or omission of that Entity constituting willful misconduct, gross negligence, fraud, or illegal conduct by that Entity as determined by a Final Order. Notwithstanding anything to the contrary in the foregoing, the release set forth in this Article VIII(D) does not release (i) the claims preserved by Article III(D)(4) of this Plan, and (ii) any post-Effective Date obligations of any Released Party expressly preserved or created under the Plan or the Confirmation Order, nor does it release any Cause of Action, obligation, or liability expressly preserved by the Plan.

**E. Releases by Holders of Claims and Interests**

**1.    Release of Debtor**

For good and valuable consideration, the adequacy of which is hereby confirmed, on the Effective Date, to the fullest extent permitted by applicable law based on the facts,

circumstances, and structure of the Plan, each Holder of a Claim against or Equity Interest in the Debtor is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released the Debtor from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or duplicative Claims asserted or assertable on behalf of or by the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or interest or other Entity, based on, attributable to, or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale, of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Entity, the restructuring of Claims and interests before or during the Chapter 11 Case, any Sale, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents related to the Plan, the direct or indirect operation or management of the Debtor, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the release set forth in this Article VIII(E)(1) does not release (i) any post-Effective Date obligations of the Debtor expressly preserved or created under the Plan or the Confirmation Order; (ii) any Cause of Action, obligation, or liability expressly preserved by the Plan; (iii) the Alter Ego Claims, or (iv) any claims against, or liabilities of, the Debtor resulting from any act or omission of the Debtor constituting willful misconduct, gross negligence, fraud, or illegal conduct.

Notwithstanding anything herein to the contrary, the release set forth in this Article VIII(E)(1) (i) does not constitute an admission as to, or otherwise impact, the Alter Ego Claims asserted by New York Wheel against any Released Party in the New York Wheel Litigation, including the viability of such Claims, which Claims, and all aspects of such Claims, and all defenses thereto, shall be expressly preserved in all aspects; and (ii) shall not be offered as evidence in any court and shall not be deemed to concede any rights, Claims, or defenses in the New York Wheel Litigation, this Chapter 11 Case, or otherwise, except for the rights, Claims, and defenses specifically released by this Article VIII(E)(1).

For the avoidance of doubt, and notwithstanding anything in this Article VIII(E)(1) to the contrary, (i) the release set forth in this Article VIII(E)(1) shall not be a basis for any argument that New York Wheel has no Alter Ego Claim against any Related Party of the Debtor based on a breach of the DBA, including, without limitation, any argument under Rule 19 of the Federal Rules of Civil Procedure, and (ii) New York Wheel shall retain the right to assert any and all defenses and rights of setoff to the Claims of the Debtor against New York Wheel that are assigned to MUSA pursuant to this Plan.  For the further avoidance of doubt, notwithstanding anything in this Plan to the contrary, the assignment of the Assigned New York Wheel Claims to MUSA under this Plan includes the right to use such claims both offensively and in defense to any Alter Ego Claims.

2.      **Release of Released Parties and New York Wheel**

For good and valuable consideration, the adequacy of which is hereby confirmed, on the Effective Date, to the fullest extent permitted by applicable law based on the facts, circumstances, and structure of the Plan, each Holder of a Claim against or Equity Interest in the Debtor that has not (i) opted out of the release set forth in this Article VIII(E)(2) by marking the appropriate "opt out" box on such Holder's ballot for voting to accept or reject this Plan or notice of non-voting status, indicating that such Holder does not consent to such release, and (ii) returned such ballot or notice in accordance with the instructions, and before the deadline, set forth thereon is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released the Released Parties and New York Wheel from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or duplicative Claims asserted or assertable on behalf of or by the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or interest or other Entity, based on, attributable to, or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale, of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and interests before or during the Chapter 11 Case, any Sale, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents related to the Plan, the direct or indirect operation or management of the Debtor, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  For the avoidance of doubt, the foregoing release shall include any and all Claims relating to the New York Wheel Project, including, without limitation, relating to the design, engineering, and/or construction of the New York Wheel Project.  Notwithstanding anything to the contrary in the foregoing, the release set forth in this Article VIII(E)(2) does not release (i) any post-Effective Date obligations of any Released Party expressly preserved or created under the Plan or the Confirmation Order; (ii) any Cause of Action, obligation, or liability expressly preserved by the Plan; or (iii) any claims against, or liabilities of, any Released Party resulting from any act or omission of such Released Party or New York Wheel constituting willful misconduct, gross negligence, fraud, or illegal conduct.

Notwithstanding anything to the contrary in this Article VIII(E)(2), the Mammoet Carveout Parties and New York Wheel shall be deemed to have opted out of the release set forth in this Article VIII(E)(2) and, without limiting the generality of this deemed opt-out, neither the Mammoet Carveout Parties nor New York Wheel release, or shall be deemed to have released, each other with respect to the Assigned New York Wheel Claims, the Alter Ego Claims, or the Direct Claims.  Further, neither the Mammoet Carveout Parties nor the Debtor will oppose (i) New York Wheel's release of the surety bond (the "<u>Bond</u>") posted in connection with the temporary restraining order entered in the United States District Court for the Southern District of New York in the New York Wheel Litigation or (ii) to

37

the extent necessary, New York Wheel's motion to vacate the United States District Court for the Southern District of New York's order requiring New York Wheel to maintain the Bond.

### F.  Exculpation and Limitation of Liability

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, Cause of Action or liability for any Exculpated Claim, except to the extent of any claim, obligation, Cause of Action or liability that is determined by a Final Order to have constituted gross negligence or willful misconduct on the part of such Exculpated Party, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of the Plan and the distributions pursuant to the Plan, and therefore are not, and on account of such solicitation and distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

In addition, neither the Debtor, nor Disbursing Agent, nor MUSA, shall be liable for any act they may do or omit under the Plan while acting in good faith and in the exercise of their reasonable business judgment, except for willful misconduct, gross negligence, fraud, or illegal conduct.  This limitation of liability will also apply to any Entity (including any attorney or other professional) employed by the Debtor, Disbursing Agent, or MUSA, and acting on their behalf in fulfillment of their respective duties under the Plan.

### G.  Injunction With Respect to Releases and Exculpations

**From and after the Effective Date, to the extent of the releases, exculpations, and limitations of liabilities granted in this Article VIII, the releasing parties shall be permanently enjoined from commencing or continuing in any manner against the Debtor, any Released Party, any exculpated party, or any party whose liability is limited or released in this Article VIII, and their respective assets and property, any suit, action, or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest, or remedy released or to be released, or with respect to which such party is the beneficiary of an exculpation or limitation of liability, pursuant to this Article VIII.**

### H.  Reservation of New York Wheel and MUSA Rights

Notwithstanding anything to the contrary in this Plan, all rights, claims, and remedies of New York Wheel and the Mammoet Carveout Parties against each other are expressly reserved and preserved, and the releases and injunctions set forth in this Plan, including the releases set forth in Article VIII(E)(2), shall be and hereby are subject to and qualified as set forth in Article III(D)(4).

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND EFFECTIVE DATE OF THE PLAN

### A. Conditions Precedent to Confirmation

It shall be a condition to Confirmation that the following conditions shall have been satisfied or waived as provided herein or pursuant to Article IX(C) hereof:

(a)    The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code;

(b)    The Plan and Confirmation Order shall be in form and substance reasonably acceptable to the Debtor; and

(c)    The Bankruptcy Court shall have determined that the plan satisfies all conditions to Confirmation under the Plan.

### B. Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived as provided herein or pursuant to Article IX(C) hereof:

(a)    The Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order, and which shall grant final approval of the Plan and the injunctions, releases, and exculpation contained therein, provided the Debtor and MUSA may jointly agree to proceed to consummate the Plan before the Confirmation Order is a Final Order in their sole discretion;

(b)    All necessary consents, authorizations and approvals shall have been given for the transfers and/or revestings of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtor under the Plan;

(c)    All other actions, documents, and agreements necessary to implement the Plan as of the Effective Date will have been delivered and all conditions precedent thereto will have been satisfied; and

(d)    Cash in an amount sufficient to pay a reasonable estimate of all Professional Claims shall have been deposited in the Distribution Account.

### C. Waiver of Conditions

The conditions to Confirmation and/or the Effective Date of the Plan set forth in Article IX hereof may be waived by the Debtor in a writing without notice to any party, or action, order, or approval of the Bankruptcy Court or any other Entity.

RLF1 20966245v.1

#### D.  Effect of Nonoccurrence of Conditions

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, including, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**ARTICLE X.**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

#### A.  Modification and Amendments

Pursuant to section 1127 of the Bankruptcy Code, subject to the consent of New York Wheel to the extent any change adversely impacts New York Wheel and the terms of the Plan Settlement Term Sheet, the Debtor may amend, modify or supplement the Plan at any time prior to Confirmation provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Debtor comply with section 1125 of the Bankruptcy Code with respect to such modifications.

Subject to the consent of New York Wheel to the extent any change adversely impacts New York Wheel and the terms of the Plan Settlement Term Sheet, the Debtor may amend, modify or supplement the Plan at any time after Confirmation and before consummation provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, the circumstances warrant such modification, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code.

A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

#### B.  Effect of Confirmation on Modifications

Pursuant to section 1127(a) of the Bankruptcy Code, entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

#### C.  Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan(s), provided, however, that any revocation or withdrawal shall be subject to the consent of New York Wheel to the extent any such revocation or withdrawal adversely impacts New York Wheel and any subsequent plan shall be  subject to the terms of the Plan Settlement Term Sheet.  If the Debtor revokes or withdraw the Plan, or if

RLF1 20966245v.1

Confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (c) nothing contained in the Plan shall constitute a waiver or release of any Claims, including any DIP Claim, or Equity Interests or prejudice in any manner the rights of the Debtor or any other Entity, or constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XI.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(a)     to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(b)     to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(c)     to hear and determine any matter, case, controversy, suit, dispute, or Causes of Action regarding the existence, nature, and scope of the releases, injunctions, exculpation and limitations of liability provided under the Plan, and to enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpation and limitation of liability, and other provisions;

(d)     to ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)     to hear and determine matters relating to insurance claims and settlements regarding insurance;

(f)     to resolve disputes as to the ownership of any Claim or Equity Interest;

(g)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified, or vacated;

41

(h)      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)      to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

(k)      to hear and determine any issue for which the Plan requires a Final Order of the Bankruptcy Court;

(l)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(m)      to hear and determine all matters related to applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(n)      to resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including any Cure Claims pursuant to section 365 of the Bankruptcy Code; and (ii) any dispute regarding whether a contract or lease is or was executory or expired;

(o)      to enter a final decree closing any of the Chapter 11 Case;

(p)      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with respect to consummation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(q)      to enforce all orders previously entered by the Bankruptcy Court; and

(r)      to hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding anything herein to the contrary, the United States District Court for the Southern District of New York shall have jurisdiction over the Assigned New York Wheel Claims, the Alter Ego Claims and the Direct Claims.

42

# ARTICLE XII.

## MISCELLANEOUS PROVISIONS

### A.  Immediate Binding Effect

Subject to Article IX hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor; any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan); all Entities that are parties to or are subject to any settlements, compromises, releases, and injunctions described in the Plan; each Entity acquiring property under the Plan; and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

Notwithstanding anything in Bankruptcy Rule 3020(e) to the contrary, (a) the entry of the Confirmation Order shall constitute a Final Order, and (b) the Confirmation Order shall take effect immediately upon its entry and the Debtor is authorized to consummate the Plan immediately after entry of the Confirmation Order and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan.

### B.  Settlement of Claims and Controversies

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims, and is fair, equitable, and reasonable.  Without limiting the foregoing, this Plan shall constitute a good faith settlement and compromise of DIP Claims and MUSA Claim.

### C.  Additional Documents

On or before the Effective Date, the Debtor may File with the Bankruptcy Court any and all agreements and other documents that may be necessary or appropriate in order to effectuate and further evidence the terms and conditions of the Plan.

### D.  Payment of Statutory Fees

After the Effective Date, the Debtor shall (a) pay from the Unclassified/Unimpaired Portion of the MUSA Contribution all the respective fees arising under 28 U.S.C. § 1930, together with interest, if any, pursuant to 31 U.S.C. § 3717, until the earliest to occur of the entry of (i) a final decree closing the Debtor's Chapter 11 Case, (ii) a Final Order converting the

Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) a Final Order dismissing the Debtor's Chapter 11 Case, and (b) be responsible for the filing of consolidated post-confirmation quarterly status reports with the Bankruptcy Court in accordance with the Local Bankruptcy Rules, which status reports shall include reports on the disbursements made by the Debtor.

### E. Disposition of Debtor's Records after Effective Date

The Debtor shall have the responsibility of storing and maintaining its books and records, which shall include computer generated or computer maintained books and records and computerized data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties, and all of the claims and rights of the Debtor in and to books and records, wherever located, until the date the Debtor has performed all of its obligations under this Plan.  To the extent MUSA requires access to any such books and records in order to negotiate, litigate, prosecute, settle, or otherwise pursue and/or resolve the New York Wheel Causes of Action in its discretion, the Debtor shall provide copies of such books and records or coordinate with MUSA to develop a document sharing, retention, and maintenance policy with respect to such books and records on terms and conditions agreed upon by the Debtor and MUSA.  The Debtor shall provide MUSA with reasonable written notice prior to any disposition of the Debtor's books and records before the New York Wheel Causes of Action have been resolved.  For the avoidance of doubt, "books and records" under this paragraph shall include any and all records, designs, drawings, and intellectual property relating to the New York Wheel Project.

### F. Reservation of Rights

Except as otherwise provided in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

### G. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### H. Service of Documents

All notices, requests and demands hereunder to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by mail or courier, addressed as follows:

(a)     if to the Debtor, to Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn: Andrew H. Sherman and Boris I. Mankovetskiy, with copies to Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Jason M. Madron;

(b)     if to MUSA, to (a) Dentons US LLP, 101 JFK Parkway, Short Hills, New Jersey 07078, Attn: Philip R. White and Jonathan S. Jemison; (b) Dentons US LLP, 233 South Wacker Drive, Suite 5900, Chicago, IL 60606, Attn: Robert E. Richards; and (c) Bayard, P.A., P.O. Box 25130, Wilmington, Delaware 19899, Attn: Justin R. Alberto; and

(c)     if to the U.S. Trustee, to the Office of the United States Trustee, J. Caleb Boggs Federal Building, Room 2207, 844 North King Street, Wilmington, Delaware 19801, Attn: Hannah McCollum.

After the Effective Date, the Debtor has authority to send a notice to any Entity that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, it must File a renewed request to receive documents with the Bankruptcy Court.  After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### I.  Further Assurances

The Debtor and all Holders of Claims receiving distributions pursuant to the Plan, and all other Entities, as applicable, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### J.  Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; provided, however, the Plan Settlement Term Sheet is incorporated herein in its entirety.

### K.  Exhibits and Related Documents

All exhibits and documents Filed in relation to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After any exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website, http://www.deb.uscourts.gov (a PACER login and password are required to access documents on the Bankruptcy Court's website).

### L.  Severability of Plan Provisions

Except as otherwise provided herein, if, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the

Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan  shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) nonseverable and mutually dependent.

### M. No Impact on Other Litigation

Neither the allowance or disallowance of any Claim against the Debtor in this Chapter 11 Case, nor the allowed amount of any Claim, shall have any precedential, preclusive or other effect, including as a purported measure of any valuation or damages, against any Person or Entity in any litigation, including in any Causes of Action preserved under the Plan (including the New York Wheel Causes of Action).

### N. Conflicts

Except as set forth in the Plan or unless otherwise ordered by the Bankruptcy Court, to the extent that the Disclosure Statement, any order of the Bankruptcy Court (other than the Confirmation Order), or any exhibit to the Plan or document executed or delivered in connection with the Plan is inconsistent with the terms of the Plan, the terms of the Plan shall control; provided, however, to the extent the Plan is inconsistent with the terms of the Plan Settlement Term Sheet, the Plan Settlement Term Sheet shall govern.

Dated: March 20, 2019
      Wilmington, Delaware

Respectfully Submitted,

MAMMOET-STARNETH LLC

By:  ___*/s/ Christiaan Lavooij*_____
Name:  Christiaan Lavooij
Title: Manager for Mammoet-Starneth LLC

46